# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARRY E. HAMILTON, | : | |
| | : | Civil No. 4:12-CV-952 |
| Plaintiff | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| CENTRE COUNTY CHILD, | : | |
| ACCESS CENTER, et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This is a *pro se* civil rights action initially brought by Harry E. Hamilton ("Hamilton"),[1] through the filing of a civil rights complaint on May 21, 2012, pursuant to 42 U.S.C. § 1983. (Doc. 1, p.1.) Hamilton's initial complaint named the Centre County Child Access Center (the "Center")[2], the Center's director, Evelyn Wald

---

[1] Although Hamilton filed this case *pro se*, Hamilton reports that he is an attorney licensed to practice law in the Commonwealth of Pennsylvania, Pennsylvania Attorney ID 71360.

[2] According to the defendants, The Center was created with community collaboration to promote the physical and emotional security of children and their families and to provide a safe and supportive environment for monitored custody exchanges. The Center's program is designed so that parents have no on-site and potentially adversarial  contact with one another. Thus, each parent is required to park in a designated area and each parent is assigned to use one of the two entrances at the Center Additionally, parents' arrival times are staggered. The parent who has current custody of the child arrives at the Center first. The child is then placed with a volunteer of the Center and the child remains with the volunteer until the other parent arrives to pick up the child. Once the other parent arrives, the child is placed in the control of that parent.

("Wald"), an attorney who represented Hamilton's spouse in a state custody dispute, Attorney Jennifer Bierly ("Bierly"), along with various Jane and John Doe defendants as defendants. Hamilton then asserted claims relating to child custody visits with Hamilton's minor son which he stated took place at the express direction of the state courts at the Center from 2008 through May 14, 2010.

Hamilton's initial complaint was difficult to follow and often disjointed, but liberally construed, recited that this matter arose out of longstanding, protracted child custody litigation in the Court of Common Pleas of Centre County. As Hamilton himself acknowledged, this custody litigation had been on-going since 2004. (Doc. 1.) Hamilton's current federal lawsuit focused on one aspect of this state child custody litigation, an aspect of this case that was specifically approved by the state courts which have handled this litigation since 2004. Specifically, Hamilton complained that, beginning on or about November 17, 2008, the Court of Common Pleas of Centre County Court entered an Order requiring all custody exchanges to take place at the Centre County Child Access Center in accordance with the Center's procedures. (Doc.1, ¶ 2; Doc. 15.) Hamilton was plainly unhappy with this arrangement, with the use of Center for the custody exchanges, and with the procedures instituted by the Center for the custody exchanges. Thus, Hamilton challenged these procedures in state court on numerous occasions, frequently

challenging the order requiring the use of the Center for the custody exchanges involving his son. The Court of Common Pleas of Centre County, however, consistently rejected Hamilton's challenges to this procedure. (Doc. 15, Ex. C and D.)

Consequently, the Center was used for all custody exchanges until on or about May 14, 2010, when Hamilton became involved in an incident with a male volunteer at the Center. (Doc. 1, ¶ 13c.) Following this May 14, 2010, incident, according to Hamilton, no further custody exchanges took place at the Center, and Hamilton further alleged that he was sent a letter from defendant Wald explaining that the visits at the center were terminated due to this May 14 incident. (Id., ¶ 13d.) According to Hamilton, from May 2010 through April 2011, Hamilton had visitation solely at the child's school or at extracurricular activities. Hamilton attributed this to his former spouse's counsel, attorney Bierly, who allegedly wrote a letter stating that exchanges of custody would not take place. (Id.)

On the basis of these averments Hamilton then sought to enjoin the Center and Ward from maintaining procedures that would have required the detention of Hamilton for varying periods of time. (Id. at p. 6-7) Hamilton requested this injunctive relief even though he acknowledged that he had not utilized these Center services, and has not used the services of this Center for more than two-and-one-half years.

On July 24, 2012, defendant Bierly filed a motion to dismiss plaintiff's complaint or in the alternative, for a more definite statement, and a brief in support this

motion. (Docs. 8 and 9.) On July 24, 2012, and August 2, 2012, the defendants Centre County Access Center and Wald also filed a motion to dismiss, or in the alternative motion for a more definite statement and an accompanying brief. (Docs. 12, 15.) On August 17, 2012, Hamilton filed a brief in opposition to the motion to dismiss, or in the alternative motion for a more definitive statement, filed by the Center and Wald. (Docs. 17, 18.) However, Hamilton did not file an opposition brief to defendant Bierly's motion to dismiss plaintiff's complaint or alternatively for a more definite statement, a regrettable failure for an attorney who was acting as his own counsel.

On October 17, 2012, we issued a Report and Recommendation which recommended that these motions to dismiss be granted by the court, and Hamilton's complaint be dismissed, but without prejudice to the plaintiff endeavoring to correct the defects cited in the report, provided that the plaintiff acts within 20 days of any dismissal order by filing an amended complaint containing "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). (Doc. 20.) In this Report and Recommendation we observed that Hamilton's complaint was flawed in at least three different ways: first, many of Hamilton's claims were time-barred; second, the <u>Rooker-Feldman</u> doctrine also prevented Hamilton from re-litigating these claims which he lost in state court; and third, Hamilton could not maintain a Section 1983 claim against a private attorney. On November 13, 2012, the

district court adopted this Report and Recommendation, and dismissed Hamilton's complaint without prejudice to the plaintiff endeavoring to file an amended complaint which addressed these fundamental concerns. (Doc. 24.)

Hamilton has filed such an amended complaint, (Doc. 23.), which is now the subject of two motions to dismiss filed and briefed by the defendants. (Docs. 25, 26, 27, 29.) While the amended complaint attempts to overcome the bar of the statute of limitations by the simple expedient of deleting most dates from this pleading and merely asserting instead that these alleged violations have continued up to May 2012, this complaint still runs afoul of settled legal doctrines which caution us against intervening in on-going child custody matters, and advances claims that are legally unsupported.

Moreover, Hamilton has, to date, ignored these motions to dismiss, an extraordinary oversight for an attorney. The defendants having filed motions to dismiss this amended complaint, it was incumbent upon Hamilton to respond to these motions. As a practicing attorney, Hamilton was, of course, well aware of his obligation to respond to motions. However, that obligation has been independently underscored for Hamilton by the court on several occasions in the course of this litigation.

First, on May 22, 2012, at the outset of this litigation, the district court entered its Standing Practice Order in this case, an order which informed the plaintiff of his

responsibility to reply to defense motions, and warned him in clear and precise terms of the consequences which would flow from a failure to comply with briefing schedules on motions, stating:

> If the party opposing the motion does not file his or her brief and any evidentiary material within the 14-day time frame, Local Rule 7.6 provides that he or she shall be deemed not to oppose the moving party's motion. The motion may therefore be granted if: (1) the court finds it meritorious; or (2) the opposing party fails to comply with Local Rule 7.6 despite being ordered to do so by the court.

(Doc. 2, p.2.)

Second, following the filing of these motions to dismiss, we entered a briefing order directing the plaintiff to respond to the motions on or before Friday, December 10, 2012. (Doc. 28.) Hamilton has also ignored this order.

Despite this clear notice, Hamilton allowed the time for responding to these defense motions to lapse without any action on his part to address these motions. Consequently, we were compelled on January 11, 2013, to enter the following third order, which noted that:

> Defendants having filed motions to dismiss Plaintiff's complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure (Docs. 25, 26.); and Defendants having provided legal support for their respective motions in their moving papers (Docs. 25, 27.); and the Court having entered a briefing order directing the Plaintiff to respond to the motions on or before Friday, December 10, 2012 (Doc. 28.); and Plaintiff having failed to respond timely to the motions to dismiss, or to respond in any way in over one month since being directed to do so; IT IS HEREBY ORDERED THAT the Plaintiff shall SHOW

CAUSE on or before **Monday, January 21, 2013**, as to why the motions to dismiss should not be granted and this case closed.

(Doc. 30.)

This deadline has now also lapsed without action by the plaintiff. Accordingly, in the face of these repeated failures to comply with our orders, we will deem the motions to dismiss to be ripe for resolution.

For the reasons set forth below, we recommend that this motions to dismiss be granted.

## II.    Discussion

### A.    Under The Rules of This Court This Motion to Dismiss Should Be Deemed Unopposed and Granted

At the outset, under the Local Rules of this court the plaintiff should be deemed to concur in these motions to dismiss, since the plaintiff has failed to timely oppose the motions, or otherwise litigate this case. These repeated procedural defaults completely frustrate and impede efforts to resolve this matter in a timely and fair fashion, and under the rules of this court warrants dismissal of the action, since Local Rule 7.6 of the Rules of this court imposes an affirmative duty on the plaintiff to respond to motions and provides that:

> Any party opposing any motion, other than a motion for summary judgment, shall file a brief in opposition within fourteen (14) days after service of the movant's brief, or, if a brief in support of the motion is not required under these rules, within seven (7) days after service of the

motion. *Any party who fails to comply with this rule shall be deemed not to oppose such motion.* Nothing in this rule shall be construed to limit the authority of the court to grant any motion before expiration of the prescribed period for filing a brief in opposition. A brief in opposition to a motion for summary judgment and LR 56.1 responsive statement, together with any transcripts, affidavits or other relevant documentation, shall be filed within twenty-one (21) days after service of the movant's brief.

Local Rule 7.6 (emphasis added).

It is now well-settled that "Local Rule 7.6 can be applied to grant a motion to dismiss without analysis of the complaint's sufficiency 'if a party fails to comply with the [R]ule after a specific direction to comply from the court.' Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (1991)." Williams v. Lebanon Farms Disposal, Inc., No. 09-1704, 2010 WL 3703808, *1 (M.D. Pa. Aug.26, 2010). In this case the plaintiff has not complied with the Local Rules, or this court's orders, by filing a timely response to this motion. Therefore, these procedural defaults by the plaintiff compel the court to consider:

[A] basic truth: we must remain mindful of the fact that "the Federal Rules are meant to be applied in such a way as to promote justice. *See* Fed.R.Civ.P. 1. Often that will mean that courts should strive to resolve cases on their merits whenever possible. However, justice also requires that the merits of a particular dispute be placed before the court in a timely fashion ...." McCurdy v. American Bd. of Plastic Surgery, 157 F.3d 191, 197 (3d Cir.1998).

Lease v. Fishel, 712 F. Supp. 2d 359, 371 (M.D.Pa. 2010).

With this basic truth in mind, we acknowledge a fundamental guiding tenet of our legal system. A failure on our part to enforce compliance with the rules, and impose the sanctions mandated by those rules when the rules are repeatedly breached, "would actually violate the dual mandate which guides this court and motivates our system of justice: 'that courts should strive to resolve cases on their merits whenever possible [but that] justice also requires that the merits of a particular dispute be placed before the court in a timely fashion'." Id. Therefore, we are obliged to ensure that one party's refusal to comply with the rules does not lead to an unjustified prejudice to those parties who follow the rules.

These basic tenets of fairness apply here. In this case, the plaintiff has failed to comply with Local Rule 7.6 by filing a timely response to the motion to dismiss. These failures now compel us to apply the sanction called for under Rule 7.6 and deem the plaintiff to not oppose these motions to dismiss.

**B.     Dismissal of this Case Is Also Warranted Under Rule 41**

Beyond the requirements imposed by the Local Rules of this court, Rule 41(b) of the Federal Rules of Civil Procedure authorizes a court to dismiss a civil action for failure to prosecute, stating that: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Decisions regarding dismissal of actions for failure

to prosecute rest in the sound discretion of the court, and will not be disturbed absent an abuse of that discretion. Emerson v. Thiel College, 296 F.3d 184, 190 (3d Cir. 2002)(citations omitted). That discretion, however, while broad is governed by certain factors, commonly referred to as Poulis factors. As the United States Court of Appeals for the Third Circuit has noted:

> To determine whether the District Court abused its discretion [in dismissing a case for failure to prosecute], we evaluate its balancing of the following factors: (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 868 (3d Cir.1984).

Emerson, 296 F.3d at 190.

In exercising this discretion "there is no 'magic formula' that we apply to determine whether a district court has abused its discretion in dismissing for failure to prosecute." Lopez v. Cousins, No. 10-1877, 2011 WL 2489897, *3 (3d Cir. June 23, 2011)(quoting Briscoe v. Klem, 538 F.3d 252 (3d Cir. 2008)) Therefore, "[i]n balancing the Poulis factors, [courts] do not [employ] a . . . 'mechanical calculation' to determine whether a district court abused its discretion in dismissing a plaintiff's case. Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir.1992)." Briscoe v. Klaus, 538 F.3d at 263. Consistent with this view, it is well-settled that " 'no single Poulis factor

is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263.  Moreover, recognizing the broad discretion conferred upon the district court in making judgments weighing these six factors, the court of appeals has frequently sustained such dismissal orders where there has been a pattern of dilatory conduct by a *pro se* litigant who is not amenable to any lesser sanction.  See, e.g., Emerson v. Thiel College, supra; Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007).

In this case, a dispassionate assessment of the Poulis factors weighs heavily in favor of dismissing this action.  At the outset, a consideration of the first Poulis factor, the extent of the party's personal responsibility, shows that the delays in this case are entirely attributable to the plaintiff, who has failed to abide by court orders, and has otherwise neglected to litigate this case, or respond to defense motions.

Similarly, the second Poulis factor– the prejudice to the adversary caused by the failure to abide by court orders–also calls for dismissal of this action.  Indeed, this factor–the prejudice suffered by the party seeking sanctions–is entitled to great weight and careful consideration.  As the United States Court of Appeals for the Third Circuit has observed:

"Evidence of prejudice to an adversary would bear substantial weight in support of a dismissal or default judgment." Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 873-74 (3d Cir.1994) (internal quotation marks and citation omitted). Generally, prejudice includes "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." Id. at 874 (internal quotation marks and citations omitted). . . . However, prejudice is not limited to "irremediable" or "irreparable" harm. Id.; see also Ware v. Rodale Press, Inc., 322 F.3d 218, 222 (3d Cir.2003); Curtis T. Bedwell & Sons, Inc. v. Int'l Fidelity Ins. Co., 843 F.2d 683, 693-94 (3d Cir.1988). It also includes "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy." Ware, 322 F.3d at 222.

Briscoe  v. Klaus, 538 F.3d at 259-60.

In this case the plaintiff's failure to litigate this claim or comply with court orders now wholly frustrates and delays the resolution of this action.  In such instances, the defendants are plainly prejudiced by the plaintiff's continuing inaction and dismissal of the case clearly rests in the discretion of the trial judge. Tillio v. Mendelsohn, 256 F. App'x 509 (3d Cir. 2007) (failure to timely serve pleadings compels dismissal); Reshard v. Lankenau Hospital, 256 F. App'x 506  (3d Cir. 2007) (failure to comply with discovery compels dismissal); Azubuko v. Bell National Organization, 243 F. App'x 728 (3d Cir. 2007) (failure to file amended complaint prejudices defense and compels dismissal).

When one considers the third Poulis factor-the history of dilatoriness on the plaintiff's part–it becomes clear that dismissal of this action is now appropriate.  In

this regard, it is clear that "'[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders.' Adams, 29 F.3d at 874." Briscoe v. Klaus, 538 F.3d at 260-61 (some citations omitted). Here, the plaintiff has repeatedly failed to abide by court orders, and timely file pleadings. Thus, the plaintiff's conduct amply displays "[e]xtensive or repeated delay or delinquency [and conduct which] constitutes a history of dilatoriness, such as consistent non-response . . . , or consistent tardiness in complying with court orders." Adams, 29 F.3d at 874.

The fourth Poulis factor–whether the conduct of the party or the attorney was willful or in bad faith–also cuts against the plaintiff in this case. In this setting we must assess whether this conduct reflects mere inadvertence or willful conduct, in that it involved "strategic," "intentional or self-serving behavior," and not mere negligence. Adams v. Trs. of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 875 (3d Cir.1994). At this juncture, when the plaintiff has failed to comply with instructions of the court directing the plaintiff to take specific actions in this case, and has violated the Local Rules, the court is compelled to conclude that the plaintiff's actions are not accidental or inadvertent but instead reflect an intentional disregard for this case and the court's instructions.

While Poulis also enjoins us to consider a fifth factor, the effectiveness of sanctions other than dismissal, cases construing Poulis agree that in a situation such as this case, where we are confronted by a *pro se* litigant who will not comply with the rules or court orders, lesser sanctions may not be an effective alternative. See, e.g., Briscoe v. Klaus, 538 F.3d 252, 262-63 (3d Cir. 2008); Emerson, 296 F.3d at 191. This case presents such a situation where the plaintiff's status as a *pro se* litigant severely limits the ability of the court to utilize other lesser sanctions to ensure that this litigation progresses in an orderly fashion. In any event, by entering our prior orders, and counseling the plaintiff on his obligations in this case, we have endeavored to use lesser sanctions, but to no avail. The plaintiff still declines to obey court orders, and otherwise ignores his responsibilities as a litigant. Since lesser sanctions have been tried, and have failed, only the sanction of dismissal remains available to the court.

Finally, under Poulis we are cautioned to consider one other factor, the meritoriousness of the plaintiff's claims. In our view, however, consideration of this factor cannot save this particular plaintiff's claims, since the plaintiff is now wholly non-compliant with his obligations as a litigant. The plaintiff cannot refuse to address the merits of his claims, and then assert the untested merits of these claims as grounds for denying a motion to sanction him. Furthermore, it is well-settled that " 'no single

Poulis factor is dispositive,' Ware, 322 F.3d at 222, [and it is] clear that 'not all of the Poulis factors need be satisfied in order to dismiss a complaint.' Mindek, 964 F.2d at 1373." Briscoe v. Klaus, 538 F.3d at 263. Therefore, the untested merits of the non-compliant plaintiff's claims, standing alone, cannot prevent imposition of sanctions.

In any event, as discussed below, the plaintiff's claims clearly fail on their merits, yet another factor which favors dismissal of this action. The legal flaws inherent in these claims are discussed separately below.

## C. Hamilton's Amended Complaint Still Fails on its Merits

Hamilton's amended complaint continues to fail on a number of independent grounds. At the outset, despite Hamilton's expedient of deleting many dates from his amended complaint we still find that many of the allegations in this *pro se* complaint remain clearly subject to dismissal on statute of limitations grounds. Specifically, to the extent that this complaint relates to child custody transfers that took place between 2008 and May 14, 2010, this complaint was first filed on May 21, 2012, more than two years after the first events complained of by Hamilton. Therefore, the complaint and amended complaint remain time-barred by the two-year statute of limitations generally applicable to civil rights matters.

It is well-settled that claims brought pursuant to 42 U.S.C. § 1983 are subject to the state statute of limitations for personal injury actions. Wilson v. Garcia, 471

U.S. 261, 266-67 (1985). In Pennsylvania, the statute of limitations for a personal injury action is two years. 42 Pa.C.S.A. § 5524. A cause of action accrues for statute of limitations purposes when the plaintiff knows or has reason to know of the injury that constitutes the basis of the cause of action. <u>Sameric Corp. of Delaware, Inc. v. City of Philadelphia</u>, 142 F.3d 582, 599 (3d Cir. 1998); <u>see also</u>, <u>Nelson v. County of Allegheny</u>, 60 F.3d 1010 (3d Cir. 1995).

While this two-year limitations period may be extended based upon a continuing wrong theory, a plaintiff must make an exacting showing to avail himself of this grounds for tolling the statute of limitations. For example, it is well settled that the "continuing conduct of [a] defendant will not stop the ticking of the limitations clock [once] plaintiff obtained requisite information [to state a cause of action]. On discovering an injury and its cause, a claimant must choose to sue or forego that remedy." <u>Barnes v. American Tobacco Co.</u>, 161 F.3d 127, 154 (3d Cir. 1998) (quoting <u>Kichline v. Consolidated Rail Corp.</u>, 800 F. 2d 356, 360 (3d Cir. 1986)). <u>See also Lake v. Arnold</u>, 232 F.3d 360, 266-68 (3d Cir. 2000). Instead:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir.1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred." <u>Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.</u>, 927 F.2d 1283, 1295 (3d Cir.1991). In

order to benefit from the doctrine, a plaintiff must establish that the defendant's conduct is "more than the occurrence of isolated or sporadic acts." West, 45 F.3d at 755 (quotation omitted). Regarding this inquiry, we have recognized that courts should consider at least three factors: (1) subject matter-whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency-whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence-whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate. See id. at 755 n. 9 (citing Berry v. Board of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir.1983)). The consideration of "degree of permanence" is the most important of the factors. See Berry, 715 F.2d at 981.

Cowell v. Palmer Township. 263 F.3d 286, 292 (3d Cir. 2001).

In this case, to the extent that Mr. Hamilton continues to complain about child custody decisions made by the state courts in 2008 and reaffirmed multiple times by the courts through May 14, 2010, these child custody rulings would have long ago had a degree of permanence which should have triggered the plaintiff's awareness of his duty to assert his rights. Thus, in this case a straightforward application of the two-year statute of limitations still compels dismissal of this action as untimely with respect to all matters which pre-date May 21, 2010.

Furthermore, we find that the Rooker-Feldman and Younger abstention doctrines also continue to apply here and in our view bar further consideration of this matter, which arises out of child custody transfer decisions made by state courts in

2008, and periodically reviewed and reaffirmed by those courts over the next several years. Given these lengthy state court proceedings, this complaint fails because we lack subject matter jurisdiction over the issues raised by Hamilton, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the <u>Rooker-Feldman</u> doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". <u>See also Desi's Pizza, Inc. v. City of Wilkes Barre</u>, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." <u>Desi's Pizza</u>, 321 F.3d at 419.

<u>Gary v. Braddock Cemetery</u>, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court

adjudication." <u>Turner v. Crawford Square Apartments III, LLP,</u>, 449 F.3d 542, 547

(3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal

courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding
> that it "is confined to cases of the kind from which the doctrine acquired
> its name: cases brought by state-court losers complaining of injuries
> caused by state-court judgments rendered before the district court
> proceedings commenced and inviting district court review and rejection
> of those judgments." [<u>Exxon Mobil Corp. v. Saudi Basic Industries
> Corp</u>.], 544 U.S. at 284, 125 S.Ct. at 1521-22; <u>see also</u> <u>Lance v. Dennis</u>,
> 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

<u>Id</u>.

However, even within these narrowly drawn confines, it has been consistently

recognized that the <u>Rooker-Feldman</u> doctrine prevents federal judges from considering

civil rights lawsuits which seek to re-examine state domestic relations court rulings

that are presented "by state-court losers complaining of injuries caused by state-court

judgments rendered before the district court proceedings commenced." <u>Kwasnik v.</u>

<u>Leblon</u>, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts

have typically deferred to the state court domestic relations decisions, and rebuffed

efforts to use federal civil rights laws to review, or reverse, those state court rulings.

<u>See, e.g.</u>, <u>Marran v. Marran</u>, 376 F.3d 143 (3d. Cir. 2004); <u>Kwasnik</u>, 228 F. App'x

238, 242; <u>Smith v. Department of Human Services</u>, 198 F. App'x 227 (3d Cir. 2006);

<u>Van Tassel v. Lawrence County Domestic Relations Section,</u> 659 F. Supp. 2d 672, 690

(W.D. Pa. 2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir. 2010)(Rooker-Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F. Supp. 2d 483, 487 (D. Del. 2007); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007); Logan v. Lillie, 965 F. Supp. 695, 696 (E.D. Pa. 1997) aff'd, 142 F.3d 428 (3d Cir. 1998); Behr v. Snider, 900 F. Supp. 719, 721 (E.D. Pa. 1995).

Given this settled legal authority, applying the Rooker-Feldman doctrine in the particular field, Hamilton's claims, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state domestic relations case that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced" simply may not be pursued in this federal forum. Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007).

Further, to the extent that Hamilton's amended complaint now suggests that there are on-going state child custody proceedings, and invites us to intervene in these matters, this pleading encounters a separate legal obstacle, the Younger abstention doctrine. The Younger abstention doctrine is inspired by basic considerations of

comity that are fundamental to our federal system of government. As defined by the courts: "<u>Younger</u> abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. <u>See</u> <u>Younger v. Harris</u>, 401 U.S. 37, 41 (1971) ('[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances.')." <u>Kendall v. Russell</u>, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." <u>Addiction Specialists, Inc. v. Twp. of Hampton</u>, 411 F.3d 399, 408 (3d Cir.2005) (citing <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the <u>Younger</u> doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. <u>Matusow v. Trans-County Title Agency, LLC</u>, 545 F.3d 241, 248 (3d Cir.2008).
>
> <u>Kendall v. Russell</u>, 572 F.3d at 131.

Once these three legal requirements for <u>Younger</u> abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state cases. <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002).

In this case, the plaintiff's *pro se* amended complaint reveals that all of the legal prerequisites for <u>Younger</u> abstention are present here. First, it appears that there are on-going state child custody proceedings in this case. Second, it is also apparent that those proceedings afford Hamilton a full and fair opportunity to litigate the issues raised in this lawsuit in his pending state case. Finally, it is clear that the state proceedings implicate important state interests, since this matter involves state child custody enforcement, an issue of paramount importance to the state. <u>See, e.g.</u>, <u>Lui v. Commission on Adult Entertainment Establishments</u>, 369 F.3d 319 (3d Cir. 2004); <u>Zahl v. Harper</u>, 282 F.3d 204 (3d Cir. 2002). Indeed, such deference to the state courts is particularly appropriate here since "the United States Supreme Court has long recognized a domestic relations exception to federal . . . jurisdiction for cases '

"involving the issuance of a divorce, alimony, or child custody decree." ' Matusow v. Trans–County Title Agency, LLC, 545 F.3d 241, 245 (3d Cir.2008) (quoting Ankenbrandt v. Richards, 504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992))." Wattie-Bey v. Attorney General's Office, 424 F. App'x. 95, 96 (3d Cir. 2011).

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). However, given the important state interest in enforcement of its domestic relations laws, and recognizing that the state courts are prepared to fully address the merits of this matter, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In addition, to the extent that Hamilton persists in attempting to bring a §1983 civil rights action against his former spouse's attorney, defendant Bierly, this claim continues to fail because it is clear that Hamilton may not bring such claims against private retained counsel  as civil rights violations pursuant to 42 U.S.C. §1983.  It is well-established that § 1983 does not by its own force create new and independent

legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a

vehicle for private parties to bring civil actions to vindicate violations of separate, and

pre-existing, legal rights otherwise guaranteed under the Constitution and laws of the

United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490

U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause

of action under § 1983 must begin with an assessment of the validity of the underlying

constitutional and statutory claims advanced by the plaintiff.

> In this regard, it is also well-settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg University of Pennsylvania, 893 F. Supp. 409, 416 (M.D.Pa.

1995), aff'd, 91 F3d 122 (3d Cir. 1996)(emphasis added). Thus, it is essential to any

civil rights claim brought under § 1983 that the plaintiff allege and prove that the

defendant was acting under color of law when that defendant allegedly violated the

plaintiff's rights. To the extent that a complaint seeks to hold private parties liable for

alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C.

§ 1983 since the statute typically requires a showing that the defendants are state

actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs like Hamilton, who may invite the courts to consider lawsuits against their private attorneys for actions taken in the course of litigation. With respect to this state action requirement, it is well-settled that the conduct of an attorney, representing a client in a state case, does not by itself rise to the level of state action entitling a plaintiff to bring a federal civil rights actions against private counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Thus, in the absence of further well-pleaded fact, this claim also fails.

In sum, this merits analysis reveals that these motions to dismiss are meritorious. Therefore, we find that all of the Poulis factors call for dismissal of this case.

Having concluded that this *pro se* amended complaint is flawed in a profound way, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current amended complaint still fails to state a viable civil rights cause of action, the

factual and legal grounds proffered in support of this amended complaint make it clear that the plaintiff has no right to relief, and the plaintiff has declined to respond to court orders, or otherwise litigate these claims. On these facts, we conclude that granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the amended complaint be dismissed without further leave to amend.

### III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' Motions to Dismiss (Docs. 25, 26.), be GRANTED and the plaintiff's amended complaint be dismissed with prejudice.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own

determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 31st day of January 2013.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge